DOMÍNGUEZ, DEMANDANTE Y APELANTE, *v.* PORTO RICO RAILWAY LIGHT & POWER COMPANY, DEMANDADA Y APELADA.

APELACIÓN procedente de la Corte de Distrito de Humacao.

No. 944.—Resuelto originalmente en junio 28, 1913.

Resuelto en reconsideración en noviembre 19, 1913.

NEGLIGENCIA—FERROCARRILES—CRUCES POR UNA CARRETERA PÚBLICA.—De acuerdo con el artículo 12 de la ley No. 64 de 1911, las compañías de ferrocarriles están obligadas a colocar barreras o cadenas u otros medios adecuados de protección en todos los cruces por una carretera pública insular.

ID.—GUARDABARRERAS—NOSCITUR A SOCIIS.—De acuerdo con el principio *noscitur a sociis* las palabras "u otros medios adecuados de protección" empleadas

en el artículo 12 de la ley No. 64 de 1911, han de entenderse en el sentido de que estos medios adecuados de protección han de ser de naturaleza parecida a las barreras o cadenas y que produzcan análogos resultados, y por lo tanto, la sustitución de cadenas o barreras por una persona empleada por una compañía como guardabarrera para dar aviso con una bandera a los transeuntes, de la aproximación de un tren, no es un medio adecuado de protección análogo a la barrera o cadena exigida por la ley.

Id.—Ferrocarriles.—El incumplimiento por una compañía de ferrocarriles del artículo 12 de la ley No. 64 de 1911, sustituyendo las barreras o cadenas por una persona para dar aviso con una bandera a los transeuntes, constituye una negligencia *per se.*

Id.—Pasos a Nivel por las Carreteras Públicas.—Los pasos a nivel por las carreteras públicas no pertenecen exclusivamente a las compañías de ferrocarriles que por ellos cruzan, sino que a su uso tienen igual derecho los que transitan por ellos, por lo que habiendo visto la guardabarrera que el automóvil no obedecía sus señales, no debió dar vía franca al tren.

Id.—Chauffeur de un Automóvil—Pasajero.—Como regla general la negligencia del conductor no es imputable a un pasajero cuando no tenía el gobierno sobre aquél.

MOCIÓN SOBRE RECONSIDERACIÓN DE SENTENCIA.

Id.—Reconsideración de Sentencia—Guardabarreras—Paso a Nivel—Pasajero de un Automóvil.—Pedida por la parte apelada la reconsideración de la sentencia dictada en este caso en junio 28, 1913, se resolvió: que las palabras ''sitio del cruce'' empleadas en la primera opinión no se refieren únicamente al punto donde la vía férrea cruza la carretera, sino que comprenden las inmediaciones de él y que el demandante no fué negligente porque no viera hasta el momento de entrar en el cruce las señales que se le hacían para que se detuviera, ya que aún cuando tuvo oportunidad de verlas, no se demostró que las vió a tiempo de evitar el accidente, y porque no tenía el deber de estar pendiente del conductor del vehículo.

Id.—Negligencia de la Guardabarrera—Acto de Negligencia de un Empleado del Demando no Alegado en la Demanda—Negación General de Negligencia en la Contestación.—Aun cuando en la demanda no se alegó que el demandado fuera culpable de negligencia por haber la guardabarrera dado vía franca al tren sin que el automóvil en que viajaba el demandante hubiera obedecido las señales que se le hacían para que se detuviera, sin embargo, como el demandado negó que el accidente se debiera a culpa o negligencia de sus empleados, y la prueba practicada sin objeción de la demandada demostró que la guardabarrera ejecutó dicho acto, este tribunal pudo en su opinión objeto de esta reconsideración hacer la declaración que hizo con respecto a este particular.

Id.—Defensas no Alegadas en la Demanda.—No habiendo sido alegada por la demandada en su contestación como defensa el hecho de que no hubo tiempo suficiente para hacer parar el tren después que se observó que el *chauffeur* desatendía las señales de la guardabarrera, ni habiendo sido tal hecho materia de prueba, no tenía necesidad esta corte de considerar esa cuestión en su opinión.

Id.—Deber de la Guardabarrera de no dar vía Franca al Tren.—El caso de *Robinson v. Western Pacific R. R. Co.*, 48 Cal., 409, sostiene la doctrina de que es el deber de la guardabarrera no dar vía franca a un tren cuando cru: a

un camino público hasta que los vehículos hayan obedecido las señales de detención.

Id.—Falta de Alegación en la Demanda de Negligencia por Parte del Demandado—Negación General de Negligencia en la Contestación.—Aún cuando la demanda en este caso no contiene alegación alguna de culpa o negligencia de la demandada, cuya omisión no fué excepcionada por la demandada en la corte inferior, sino que por el contrario negó en su contestación a la demanda la existencia de culpa o negligencia por sus empleados, este tribunal en apelación no tenía que considerar la excepción alegada por primera vez en esta corte de que la demanda no aducía hechos bastantes para constituir una causa de acción, porque la negación de negligencia alegada en la contestación a la demanda subsana la omisión de tal alegación en la demanda.

Id.—Noscitur a Sociis—Medios Adecuados para Impedir el Paso por un Cruce de Ferrocarril.—No es forzada ni perjudicial la interpretación dada al artículo 12 de la ley No. 64 de marzo 9, 1911, en la opinión emitida en este caso en junio 28, 1913, en el sentido de declarar que una guardabarrera no es un medio adecuado equivalente a las barreras y cadenas para impedir el paso por un cruce de ferrocarril, por el hecho de que sostenga la demandada que no conoce otros medios equivalentes a las puertas y barreras.

Los hechos están expresados en las opiniones.

Abogados del apelante: *Sres. Francisco González, Juan B. Huyke* y *Carlos Travecier.*

Abogado de la apelada: *Sr. J. Henri Brown.*

El Juez Asociado Sr. Aldrey emitió la opinión del tribunal.

La presente apelación fué establecida por el demandante contra la sentencia pronunciada por la Corte de Distrito de Humacao, que declaró sin lugar su demanda, en la que reclamaba que la corporación Porto Rico Railway, Light & Power Company le pagase determinada cantidad de dinero como indemnización de los daños y perjuicios que sufrió a consecuencia de un choque ocurrido entre el automóvil en que viajaba y un tren de dicha demandada.

De los hechos declarados probados por la corte y del examen que hemos hecho de la exposición del caso, podemos llegar a las conclusiones de que el demandante Jesús Domínguez, comerciante de Humacao, el día 6 de noviembre de 1911 tomó asiento como pasajero en Caguas en un automóvil que con otras personas había de conducirlo a San Juan, mediante el pago de cierta cantidad; que dicho demandante viajaba

con frecuencia por la carretera que de Caguas conduce a San Juan; que no conocía al *chauffeur* que había de conducir el automóvil que alquiló; que la línea férrea de la demandada cruza dicha carretera insular con un paso a nivel en un sitio cercano a Caguas, en el que si bien existen postes con anuncios que dicen "Ojo al tren," "Párese," "Mire," "Oiga," *"Railroad Crossing,"* no tiene barreras ni cadenas, aunque hay una persona empleada por la demandada como guardabarrera, con el fin de hacer señales a los transeuntes cuando se aproximan los trenes y también para hacer señales a éstos respecto al paso por ese cruce; que al llegar a ese sitio el automóvil en que viajaba el demandante la guardabarrera le hizo señas con una bandera roja para que se detuviera, mientras con otra verde daba paso libre al tren; que en aquel sitio estaba detenida una calesa; que el *chauffeur* del automóvil no lo detuvo y continuó su marcha desviándose hacia el lado izquierdo de la carretera, la que en ese sitio tiene unos diez metros de ancho y cruzó la vía en el momento en que llegaba un tren, por el que fué alcanzado y de cuya colisión, ocurrida a eso de las tres y media de la tarde, resultó el demandante con varios golpes y heridas; que el automóvil llevaba puesta la capota pero no las cortinas; que ese día el demandante, no siendo aún la hora oficial de llegar el tren a Caguas, cogió el automóvil para llegar más pronto a San Juan, donde había ido muchas veces en automóvil desde Caguas; que el demandante no tiene ningún defecto en los ojos ni en los oídos y cuando llegaban al paso a nivel vió una mujer con bandera, la que levantó en el mismo momento en que el automóvil entraba en el cruce; que por preponderancia de prueba la corte inferior declaró probado que el tren antes de llegar al cruce tocó el pito y la campana; que en el sitio en que se halla ese paso a nivel hay un cerrito al lado derecho de la carretera en la dirección de Caguas a San Juan, que en aquella época estaba sembrado de cañas, que impedía ver un tren que viniera de Río Piedras para Caguas, y que antes

de llegar el automóvil a la vía, la guardabarrera le hizo señas con la bandera sin conseguir detenerlo.

Los fundamentos que tuvo la corte inferior para pronunciar la sentencia absolviendo a la demandada de la reclamación que se le hizo, fueron que no existió negligencia por parte de la demandada al no haber colocado en ese sitio barreras ni cadenas, toda vez que tenía una guardabarrera, la que cumplió con su deber de avisar al automóvil; que el *chauffeur* fué negligente y que también lo fué el demandante, porque conociendo aquel sitio peligroso, y pudiendo ver y oir, nada hizo para evitar que el automóvil entrase en la vía.

Como la negligencia es la consecuencia del incumplimiento de algún deber, veamos cuál era el de la corporación demandada con respecto al sitio en que ocurrió el accidente, por cuyos perjuicios reclama el demandante.

En 9 de marzo de 1911 la Legislatura de Puerto Rico aprobó una ley que empezó a regir el mismo día de su aprobación, que es la número 64 de las de ese año, referente a la reglamentación de los transportes que se hagan por ferrocarril, en la que por su artículo 12 se dice lo siguiente:

"Artículo 12.—Toda compañía de ferrocarril de servicio público queda por la presente obligada a establecer y conservar barreras o cadenas u otros medios adecuados de protección en todos los cruces de las carreteras públicas insulares y demás cruces públicos que el Consejo Ejecutivo designare. Cualquier compañía de ferrocarril que deje de establecer y conservar las barreras o cadenas en los cruces que por esta ley se requieren y en los demás cruces cuya construcción y conservación se ordenare por el Consejo Ejecutivo, será culpable de delito menos grave (*misdemeanor*) y convicta que fuere ante una corte de jurisdicción competente, será multada con una suma que no exceda de $100 por cualquiera de dichas faltas."

Como en ese cruce o paso a nivel por una carretera pública insular no tenía la corporación demandada barreras ni cadenas, pero tenía empleada una persona con el fin de avisar por medio de una bandera de color la proximidad de los trenes a los que por la carretera transitasen, hemos de considerar

si al utilizar ese empleado en sustitución de las barreras y cadenas cumplió con el precepto de la ley que le permite utilizar también cualquier otro medio adecuado de protección.

La barrera y la cadena son los medios que se utilizan para cerrar e impedir el paso por algún sitio y cuando se emplean en un cruce o paso a nivel de un ferrocarril, producen el resultado de cerrar y obstaculizar el paso por la vía. Colocada la barrera o la cadena, es materialmente imposible transitar por el cruce a menos que sea rota o se salte y por consiguiente es un medio de tal naturaleza, que una vez colocado oportunamente impide los accidentes y colisiones, que es el fin perseguido por la ley al ordenar su colocación. Según se dice en el caso de *Chicago and Alton R. R. Co.* v. *Wise,* 206 Ill., 453, 69 N. E., 500, confirmado en 106 Ill. App., 174, las barreras requeridas por el estatuto tienen el objeto no sólo de servir de aviso sino también son un medio de obstrucción material. Por tanto, al exigir la ley que en los cruces por carreteras públicas insulares se pongan barreras o cadenas o cualquier otro medio adecuado de protección, ha de entenderse que estos medios adecuados de protección han de ser de naturaleza parecida a las barreras o cadenas, para producir análogos resultados a los que intentó el legislador con la barrera o la cadena. Según la regla *noscitur a sociis* cuando las palabras de determinada significación de la ley van seguidas de otras de sentido más general que no son tan específicas y limitadas, la palabra o palabras generales deberán ser interpretadas en el sentido de que son aplicables a las personas o las cosas de igual clase según se designan las mismas en la determinada palabra o palabras, a menos que aparezca que la intención del legislador ha sido distinta. En los siguientes casos, palabras de sentido general han sido interpretadas de ese modo. *Miller* v. *State,* 23 N. E., 95; *People* v. *Richards,* 18 N. Y., 142; *McGaffin* v. *City of Cohoes,* 30 Am. Rep., 309.

Aplicando estos principios al caso presente, debemos llegar a la conclusión de que una persona empleada como guarda-

barrera por la corporación demandada para dar aviso con
una bandera a los transeuntes de la aproximación de un tren,
no es un medio adecuado de protección similar o análogo a
la barrera o cadena exigida por la ley, ya que no produce
el efecto de obstaculizar ni impedir materialmente la entrada
en la vía. Así pues, la corporación demandada en la fecha
en que ocurrió el accidente no había cumplido con el deber
que le impuso la ley de colocar en ese sitio, barreras, cade-
nas o cualquier otro aparato análogo a ellas para protección
de los transeuntes, lo que constituye una negligencia *per se*
por haber dejado de cumplir con ese precepto estatutorio.
33 Cyc., 968, y casos citados en la nota No. 8.

Además de esto, los pasos a nivel por las carreteras públi-
cas no pertenecen exclusivamente a las compañías de ferro-
carriles que por ellos cruzan, sino que a su uso tienen igual
derecho los que transitan por ella, por lo que habiendo visto
la guardabarrera que el automóvil no obedecía a sus señales,
no debió dar vía franca al tren, sino hacerle señas de que se
detuviese, porque el tren no debía cruzar la vía en ese sitio
hasta tanto que los vehículos que se aproximaban al cruce
hubieran obedecido a sus señales, dado que no se habían
puesto en ella los aparatos requeridos por la ley. *Robinson*
v. *Western P. R. Co.*, 48 Cal., 409 y casos que cita.

En vista de lo que hemos expuesto, hubo negligencia por
parte de la corporación demandada y al sostener lo contrario
la corte inferior cometió error.

El *chauffeur* que conducía el automóvil conocía ese sitio por
llevar algunos meses viajando con su carro, sabía que no tenía
barreras ni cadenas, por lo que al acercarse a aquel sitio debió
haber sido precavido y prudente, debió detener su carro para
ver y oir o ponerlo a una marcha tan reducida que pudiera
detenerlo en cualquier momento, y el no haber tomado esas
precauciones constituye negligencia por su parte, de tal
suerte, que si hubiera procedido como un hombre prudente el
accidente no hubiera podido tener lugar a pesar de la negli-
gencia de la demandada, por lo que, no obstante ésta, la causa

próxima de la colisión ocurrida fué el haber entrado el automóvil en la vía sin tomar esas precauciones.

Expuesto lo que precede, veamos si la negligencia del *chauffeur* puede sufrirla el demandante que era un pasajero en su vehículo y le impide recobrar los daños que sufrió.

Mientras la regla general establecida por las decisiones en Inglaterra fué que la negligencia del conductor sería imputada a un pasajero en accidentes causados por la negligencia de un tercero a la cual contribuyó el conductor, y que ésta doctrina fué adoptada por unas pocas decisiones inglesas y americanas, sin embargo, tales decisiones han sido expresamente rechazadas luego en Inglaterra y desaprobadas por la Corte Suprema de los Estados Unidos en el caso de *Little* v. *Hackkett,* 116 U. S., 366; 6 S. Ct., 391; 29 L. ed., 652, siendo hoy la regla general, que la negligencia del conductor no será imputada al pasajero cuando no tenía gobierno sobre dicho conductor. Es cierto, según sostiene la corte inferior, que como excepción a esa regla general la negligencia del conductor puede ser imputada al pasajero, cuando teniendo éste oportunidad de descubrir y evitar el peligro mediante el ejercicio de un cuidado ordinario no lo descubre o evita, mas para que podamos llegar a la conclusión de que la negligencia del *chauffeur* que conduce un automóvil pueda ser imputada al pasajero que viaja en un asiento de la parte trasera, es necesario que el demandado pruebe que las circunstancias fueron tales que el apelante tenía el deber de estar atento durante el viaje al paso a nivel existente en la carretera. No creemos que el solo hecho de que el demandante conocía la existencia de tal paso a nivel le impuso el deber de estar atento a él y de avisar al conductor del automóvil. El apelante aunque viajaba con un *chauffeur,* desconocido para él, tenía derecho a esperar que fuera precavido y prudente como la mayoría de los hombres y a confiar en su habilidad en el manejo del carro, siendo por otra parte muy difícil en tal clase de vehículos, conocer en un momento determinado, si un peligro puede evitarse o nó con la rapidez en la marcha. El apelante

comenzaba su viaje con ese *chauffeur* y no se ha demostrado que hasta el momento del choque por el que reclama, hubiera ocurrido algo que pusiera en duda su pericia o su prudencia. No creemos que el apelante estaba obligado a vigilar todos los peligros que podían existir en el camino, ni aun los que conocía, y que debiera llamar la atención sobre ellos en cada caso al conductor. Tampoco creemos que la regla de que el pasajero pudo ver y oir sea tan estricta que necesariamente haya de deducirse siempre que el pasajero vió y oyó, si no se prueba que en efecto miraba hacia el sitio peligroso.

En vista de las circunstancias de este caso, tal como aparecen de los hechos antes expuestos y de la naturaleza del vehículo en que viajaba el apelante, somos de opinión que no puede serle imputada la negligencia del conductor y que al hacerlo así la corte inferior cometió error.

La sentencia debe ser revocada y concederse un nuevo juicio.

> *Revocada ordenándose la celebración de un nuevo juicio.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf y del Toro.

El Juez Asociado Sr. MacLeary no tomó parte en la resolución de este caso.

———————

Presentada moción de reconsideración por la parte apelada fué denegada en noviembre 19, 1913, por medio de la siguiente opinión emitida por el Juez Asociado Sr. Aldrey.

El apelado y demandado ha solicitado de nosotros que reconsideremos la sentencia que hemos dictado resolviendo definitivamente este caso. Consideraremos la moción en sus distintos fundamentos por el mismo orden en que han sido alegados.

Como primer motivo se alega que la sentencia se funda en una equivocación respecto a los hechos probados, por las siguientes razones:

(*a*) porque la sentencia parte del supuesto equivocado de que la guarda barrera no hizo señales al automóvil hasta que éste llegó al paso a nivel; y

(*b*) porque sostiene también equivocadamente, que el demandante no vió las señales de la guardabarrera hasta que llegó al cruce.

Respecto al apartado (*a*) diremos que la opinión que se escribió en este caso no dice que la guarda barrera no hiciera señales al automóvil hasta que éste llegó al mismo cruce como parece entender la parte peticionaria. Lo que hemos dicho es que las señales fueron hechas cuando el automóvil llegó al *sitio del cruce,* palabras que no se refieren únicamente al punto donde la vía férrea cruza la carretera, sino que comprenden las inmediaciones de él. Además, para desarrollar las conclusiones a que llegamos en la opinión, es indiferente que la guardabarrera hiciera las señales al automóvil antes de llegar éste al cruce o cuando llegó al mismo sitio del paso a nivel, pues si hemos declarado que el demandante no fué negligente, fué porque él *no vió* las señales hasta el momento de entrar en el cruce, porque no tenía el deber de estar pendiente del conductor del vehículo y porque aun cuando tuvo oportunidad de ver las señales, no se demostró que las vió a tiempo de evitar el accidente.

En el segundo motivo de reconsideración se interesa que eliminemos de la opinión la declaración de que la guarda barrera, empleada de la demandada, fué culpable de negligencia al dar vía franca al tren sin que el automóvil en que viajaba el demandante hubiera obedecido las señales que se le hacían para que se detuviera y para ello se alega:

(*a*) que ese pronunciamiento no fué objeto de alegación;

(*b*) que no consta que hubo tiempo suficiente para hacer parar el tren después que se observó que el *chauffeur* desatendía las señales de la guarda barrera; y

(c) porque el caso de *Robinson* v. *Western Pacific Railroad Company,* que se cita en la opinión, no sostiene la doctrina de que sea el deber de la guardabarrera no dar vía franca al tren cuando cruza un camino público hasta que los vehículos hayan obedecido las señales de detención.

Respecto al particular letra (a) si bien no fué objeto de alegación en la demanda ese acto de negligencia, sin embargo, como la demandada negó que el accidente se debiera a culpa o negligencia de sus empleados, tal alegación planteaba la cuestión de si en verdad existió o nó culpa o negligencia en ellos y toda vez que de la prueba practicada sin objeción de la parte demandada resultó que la guarda barrera dió vía franca al tren al mismo tiempo que hacía señales al automóvil para que se detuviera, pudimos hacer la declaración cuya eliminación se pretende. En cuanto a la razón consignada bajo la letra (b) como no fué defensa alegada por el demandado ni fué materia de prueba, no tuvimos necesidad de considerar esa cuestión; y en cuanto al particular letra (c) si bien el caso de *Robinson* v. *Western Pacific Railroad Company,* 48 Cal., 409, no emplea las mismas palabras que nosotros, sin embargo, llega a las mismas conclusiones que hemos establecido. Ese caso se refiere al accidente sufrido por una mujer al cruzar una vía férrea por detrás de un tren que estaba detenido en el cruce de un calle pública y en él dijo la corte que "si hubieran algunas personas por delante de una locomotora próxima a partir, la campana les anuncia que dejen la vía, pero si no la dejan, no está justificado el maquinista en dirigir su máquina sobre ellas," lo cual equivale a decir, haciendo aplicación de la anterior doctrina al presente caso, que un empleado como guardabarrera no debe dar vía franca a un tren para cruzar la carretera pública, cuando observa que un automóvil que se dirige hacia el cruce de la vía no ha atendido sus señales de detenerse. También declaró que "debería haber sido situado un hombre donde pudiera ver los raíles en la dirección en que el tren había de moverse para que, a su señal de que la vía estaba franca, el maquinista pudiera

hacer andar su máquina." Y más adelante se dijo en. la misma opinión que "a menos que se declare que un viandante estaba impedido de usar aquella porción de la calle mientras el tren estaba detenido cerca de ella, es menester concluir que la demandante estaba justificada en creer que podía cruzar la vía con seguridad cuando intentó hacerlo."

El tercer apartado expone como motivos para la reconsideración interesada, que se ha dejado de resolver la cuestión suscitada por la demandada, tanto en esta corte como en la inferior, respecto a la falta de hechos en la demanda que determinen una causa de acción, toda vez que no contiene alegación alguna de culpa o negligencia de la demandada. Tal excepción no fué alegada en la corte inferior y por primera vez se propuso en el alegato presentado por la demandada en la apelación. La contestación de la demandada negó la existencia de culpa o negligencia de sus empleados.

Según dijimos en el caso de *Olivieri* v. *Mck. Jones,* 17 D. P. R., 1163, los casos resueltos en 110 Cal., 169; 99 Cal., 259 y 113 Cal., 532, sientan la doctrina de que "cuando un demandante procede a la celebración del juicio, y se dicta sentencia a su favor, si la demanda carece de alguna alegación que se expresa en la contestación a la demanda, se estima que las omisiones de la demanda han quedado, después del juicio, subsanadas o suplidas por la contestación. Esto equivale a una renuncia o a no poder ir contra sus propios actos."

El último de esos casos, que es el de *Vance* v. *Anderson,* dice que si bien en la obra "Pomeroy on Remedies," sec. 579, se opina que la regla antes mencionada debería ser limitada a casos en que la contestación alegue afirmativamente el hecho que omitió la demanda, aunque algunas veces se ha aplicado cuando la contestación simplemente contenga una negación de los hechos que debieron ser afirmados por el demandante, sin embargo, declara la corte que la práctica en California ha sido considerar las negaciones expresas como suficientes para curar el defecto de la demanda. De acuerdo, pues, con esa jurisprudencia, al negar expresamente la contestación la

falta de culpa o negligencia de sus empleados, subsanó la omisión de tal alegación en la demanda e hizo innecesario considerar esa excepción.

El apartado cuarto de la moción alega que la interpretación que hemos dado al artículo 12 de la ley número 64, de acuerdo con la doctrina de *noscitur a sociis,* infringe:

(*a*) el principio de que los estatutos penales deben interpretarse estrictamente, resolviéndose cualquier ambigüedad a favor del supuesto infractor;

(*b*) la regla de que los estatutos deben interpretarse de manera que sus palabras no queden sin sentido y que la interpretación que hemos dado a las palabras ''otros medios adecuados'' en el sentido de ''medio para cerrar e impedir el paso por un cruce de ferrocarril'' dejan sin efecto las palabras de la ley, por cuanto en la práctica de ferrocarriles no se conocen otros medios para obstaculizar el paso sino las barreras y cadenas;

(*c*) porque la demanda no alega una violación del estatuto por cuanto no se alegó ni probó que el cruce esté en una carretera pública insular y tampoco que en aquel sitio no existieran barreras o cadenas.

Respecto al extremo letra (*a*) no podemos, sin violentar la ley, declarar que una guardabarrera sea un medio adecuado equivalente a las barreras y cadenas, por lo que la interpretación dada al estatuto no es forzada y perjudicial; respecto al particular (*b*) la alegación de que la demandada no conoce otros medios de obstaculizar el paso por una vía que las barreras y las cadenas, no es suficiente para llegar a la conclusión de que en realidad no existan tales medios; y respecto al particular (*c*) la prueba demostró que en el sitio en que ocurrió el accidente la vía de la demandada atraviesa la carretera pública insular que une a Caguas con San Juan y también que allí no existían entonces cadenas ni barreras.

Entendemos por lo expuesto que no hay motivos para

reconsiderar la sentencia, y la moción por tanto debe ser denegada.

*Denegada la moción de reconsideración.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf y del Toro.

El Juez Asociado Sr. MacLeary no tomó parte en la resolución de esta moción.